THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CT-3173-H

| ROBERT S. CHAMBERLAIN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | **AFFIDAVIT MARSHAL E. GRIFFIN** |
| v. | ) ) | |
| CARLTON B. JOYNER, et al., | ) ) | |
| Defendants. | ) | |

I, MARSHAL E. GRIFFIN, being first duly sworn, do hereby depose and say:

1. I am an adult over the age of eighteen years, have never been adjudged incompetent, suffer from no mental or emotional illness, and make this affidavit of my own free will, stating facts of which I have personal knowledge.

2. I am a named defendant in the above-captioned case and I am currently employed by the North Carolina Department of Public Safety ("NCDPS") as a correctional career coach assigned to North Carolina Correctional Institution for Women. I have been employed with the NCDPS since 2001 and I was employed as a correctional lieutenant at Central Prison during the relevant time frame outlined in the Complaint. I served as a correctional lieutenant until March 30, 2015 at Central Prison.

3. I am familiar with the policies and procedures of the North Carolina Department of Public Safety, Division Adult Correction and Juvenile Justice. I also am trained and experienced in the management of inmates, like Plaintiff, in my capacity as a correctional lieutenant.

1

4. According the NCDPS' policies and procedures, following any use of force, officers involved in use of force or other incident, the officers make a verbal report of the incident to the OIC as soon as possible. The OIC then appoints an investigating officer who in turn reviews the reporting officers' report, obtain witness statements, the inmate's statement, a statement from medical staff, review any video of the incident, and ultimately, ensures that the incident in question was handled appropriately. The incident reports created from these investigations are maintained in the regular course of business of the prison facility. Incident reports can be created from uses of force, medical emergencies, or an unexpected need to escort an inmate or remove him from his cell, among other reasons.

5. In my capacity as Lieutenant, I supervised correctional officers, assisted in the management of inmate population, responded to emergency situations at the facility, and also investigated use of force incidents and other incidents. Typically, an investigator is not directly involved in an incident.

***Incident Date 23 January 2014***

6. I investigated an incident on January 23, 2014 involving Plaintiff. A true and accurate copy of the incident report is attached hereto as Exhibit A.

7. Plaintiff was found unresponsive in his cell by Officer Blackburn during medication rounds. *See Exhibit A.* Officer Blackburn attempted to get a response from Plaintiff Chamberlain by opening the food passage door. *See Exhibit A.* When he received no response, Officer Blackburn called for a supervisor to assist. *See Exhibit A.*

8. When an inmate is not responsive in his cell, it requires opening the cell to assess the inmate. However, opening a cell is not a simple task in that some inmates use that as an

opportunity to attack officers or attempt to escape their cells. It requires a coordinated effort to open a cell and assess an inmate, which is why a supervisor is contacted when an inmate is found to be unresponsive.

9. In this incident, Sergeant Suggs (who is a named Defendant) responded along with Sergeant Tenbroek, Officer Bixler and Officer Jones (who is also a named Defendant). *See Exhibit A*. Officer Bixler had a protective shield in the event Plaintiff attempted to resist or assault the officers. *See Exhibit A*. The shield acts as a protection, but it is also used to assist in placing an inmate firmly on the flattest available surface in order to maintain correctional control during handcuffing, which is how it was used by Officer Bixler in this case. *See Exhibit A*, statement Suggs. In any event, Defendant Jones was able to successfully cuff Plaintiff and assist Plaintiff to his feet with the help of Officer Blackburn. *See Exhibit A*. There was no force used during this incident. *See Exhibit A*. Based on my investigation, Defendants Watson and Raynor were not involved at all. *See Exhibit A*.

10. Plaintiff was escorted to medical immediately without incident for an evaluation. *See Exhibit A*, medical assessment, p. 3 of report. He was evaluated without injury noted, but because of his complaints of abdominal pain along with vomiting and coughing blood, he was referred to UNC Hospital Emergency Room by the physician. *Id.* Correctional staff cannot, and do not, make medical judgments concerning referral and treatment of inmates.

11. Plaintiff provided a statement pursuant to my investigation where he alleged that Defendant Suggs "slammed" the shield on him, and also that Defendant Watson approached the holding cell to which Plaintiff was taken to await his medical assessment

3

and said "if any more blood got on the floor, he would have his ass whipped." *See Exhibit A*. I investigated both of those claims and received statements from all the involved officers. *See Exhibit A*. I found Plaintiff's allegations to be unfounded. *See Exhibit A*, p. 4 of report. Additionally, this incident was quick as noted by the report time of 12:17 pm only a few minutes after the incident occurred. *See Exhibit B*.

### *Incident Date 24 February 2014 – Time 10:30 AM*

12. I was involved in the incident on 24 February 2014 at 10:30 am so I was not the assigned investigator. However, a true and accurate copy of the incident report (which we maintain at the facility) is attached here to as *Exhibit B*.

13. I had completed an interview with Plaintiff Chamberlain about a prior incident he was involved in with correctional staff and he was being escorted back to his cell by Officer Hunter, who is named as a Defendant in this case. *See Exhibit A*, p. 1. Plaintiff refused a direct order from Defendant Hunter and pulled away from the escort, stating that he should punch Defendant Hunter in the face. *Id.* In response to this quickly escalating situation, Defendant Hunter made another direct order for Plaintiff to face the door, which was refused. *Id.* Officer Hunter then utilized hands on force to place Inmate Chamberlain on the nearest flat surface, as we are trained to do, to maintain correctional control. *Id.* Inmate Chamberlain resisted and Officer Hunter used a bent-wrist come-along to maintain control of Plaintiff's right arm and escort Inmate Chamberlain to the nurse's station. *Id.* I also assisted by applying bent-wrist come-along on Plaintiff's left arm and wrist to assist with the escort. *Id.* Bent-wrist come-along is a method of force we are trained to use to maintain correctional control of an inmate who is in violation of

4

direct orders. I did not use any more force than was necessary to maintain correctional control of Plaintiff.

14. Inmate Chamberlain would have been aware of the requirements to follow the directions of a correctional officer. Inmates are informed of the conduct rules upon their admission as inmates to a facility. Furthermore, the conduct rules are available for their review. The pertinent policy provides as follows:

    .0301 GENERAL The following rules govern the conduct of inmates under the custody of the Department of Public Safety:
    (a) Attitude Towards Officials. When in the presence of any state official or any member of the prison staff, inmates shall maintain an attitude of attention and respect.

    (b) Obedience to Orders. All inmates will obey promptly and properly any lawful order given them by members of the prison staff.

    http://www.doc.state.nc.us/dop/policy_procedure_manual/b0300.pdf. It is vital that inmates follow lawful orders given by correctional staff to ensure that the facility's safety is maintained. Correctional staff must require inmates to follow direct orders to avoid volatile situations that are not controlled, which would threaten safety of the staff and the inmates at a facility.

15. Plaintiff Chamberlain was screened by Nurse Florence following the incident who noted that there was a minor apprasion to the left thumb and wrist area as well as minor scrapes on the right hand. *Id.* After a full evaluation, no other complaints or other acute injuries were noted.

16. The force used by me and Defendant Hunter was reviewed by several supervisors and found to be minimal and necessary to maintain correctional control. *Exhibit B*, p. 1-3.

17. The video of the incident is attached to my affidavit as *Exhibit C*. The video provides the angles of different cameras in the Unit. This incident can be seen starting at point 10:30.

5

Additionally, the incident, as seen on the video, is very short. The report was made at 10:35 just minutes after the incident occurred. *See Exhibit B.*

18. I was not involved with any other incidents with Plaintiff on that day nor was I involved with any of the other incidents described by Plaintiff in his Complaint except as described herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S. Code § 1746.

Executed on this the 24 day of September, 2015.

_____
Marshall Griffin, AFFIANT

6

**************************************
CERTIFICATE OF SERVICE

I, Donna Elizabeth Tanner, Assistant Attorney General, do hereby certify that on this date a copy of the foregoing *Affidavit* was filed utilizing the CM/ECF system and notice was provided to any parties receiving notice therein.

I hereby certify that I have on this day, mailed said document to the following non-CM/ECF participant:

>Robert S. Chamberlain
>9140 McFarland Rd.
>Laurel Hill, NC  28351

This the 28th  day of September, 2015.

>/s/ Donna E. Tanner
>Donna E. Tanner
>Assistant Attorney General